UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JAMES E. COLEMAN,                   )
                                    )
    Plaintiff,                      )
                                    )
    v.                              )    Civil Action No. 12-1352 (PLF)
                                    )
JEH JOHNSON, in his official        )
capacity as Secretary of the United States )
Department of Homeland Security,    )
                                    )
    Defendant.[1]                   )
_____ )

## OPINION

This matter is before the Court on defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment under Rule 56. Plaintiff, James E. Coleman, has charged his employer, the Department of Homeland Security ("DHS"), with violating Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). DHS argues that none of Mr. Coleman's claims has merit. After careful consideration of the parties' papers, the relevant legal authorities, and the entire record in this case, the Court will grant the government's motion in part and deny it in part.[2]

---

[1] The Court has substituted the current Secretary of Homeland Security, Jeh Johnson, in place of his predecessor, former Secretary Janet Napolitano, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The papers reviewed in connection with this motion include: plaintiff's complaint ("Compl.") [Dkt. No. 1]; defendant's memorandum in support of its motion to dismiss or, in the alternative, for summary judgment ("Def.'s Mot.") [Dkt. No. 9]; defendant's statement of undisputed material facts ("Def.'s Stmt. Mat. Facts") [Dkt. No. 9]; Boyden Rohner's March 13, 2013 declaration ("Third Rohner Decl.") [Dkt. No. 9-2]; Boyden Rohner's July 20, 2011

I. BACKGROUND

James Coleman is a fifty-two-year-old African-American male who has worked for DHS since March 2008. Compl. ¶ 8.³ During all times relevant to his allegations, he worked as a member of the DHS Secretary's "Briefing Staff," as a GS-13 Production Specialist. Id. ¶ 9. In the summer of 2010, DHS posted a job vacancy for a GS-14 "Supervisory Production Specialist" position (job announcement number 362712). Def.'s Stmt. Mat. Facts ¶ 3. There were two openings for this position. See id. ¶¶ 8, 15. Mr. Coleman applied for the position, "which would have been a promotion . . . with greater pay and enhanced professional stature." Compl. ¶ 14. A member of the DHS human resources staff prepared a list of qualified applicants, and sent it to another DHS employee, Boyden Rohner. Def.'s Stmt. Mat. Facts ¶ 5. Ms. Rohner was a member of the selection board for the position. Id. She also happened to be Mr. Coleman's supervisor. Id.

Ms. Rohner reviewed the resumes and applications of the qualified candidates, and identified a subset to be selected for interviews. Def.'s Stmt. Mat. Facts ¶ 6. Mr. Coleman was one of the candidates she decided to interview. Compl. ¶ 14. After the interviews were completed, the selection board unanimously selected two of the candidates for the promotion: John Destry and Alan Eckersley. Def.'s Stmt. Mat. Facts ¶ 8. Destry and Eckersley were

---

declaration ("Second Rohner Decl.") [Dkt. No. 9-3]; Boyden Rohner's May 16, 2011 declaration ("First Rohner Decl.") [Dkt. No. 9-4]; Nicole M. Heiser's March 14, 2013 declaration ("Heiser Decl.") [Dkt. No. 9-5] and associated exhibits; plaintiff's memorandum in opposition to defendant's motion ("Pl.'s Opp.") [Dkt. No. 11]; plaintiff's responses to defendant's statement of undisputed material facts ("Pl.'s Resps.") [Dkt. No. 11-1]; defendant's reply in support of its motion ("Def.'s Reply") [Dkt. No. 14]; and Nicole M. Heiser's May 21, 2013 supplemental declaration ("Supp. Heiser Decl.") [Dkt. No. 14-1] and associated exhibits.

³ Even though Mr. Coleman alleges discrimination on the basis of his race, he did not actually identify his race in his complaint. It is clear from the record, however, that Mr. Coleman is African-American. See, e.g., Def.'s Mot. at 7.

notified of their selections on or before October 29, 2010.  Id. ¶ 12.  Mr. Coleman was not selected.  Destry accepted the promotion, id. ¶ 14, but Eckersley declined the position on November 5, 2010, id. ¶ 13.

Mr. Coleman made his first contact with DHS's Equal Employment Opportunity ("EEO") office on December 11, 2010.  Compl. ¶ 16.  He alleged discrimination regarding his non-selection for the promotion, as well as harassment by his co-workers.  Id.  Around this time, Mr. Coleman's relationship with his supervisor, Ms. Rohner, was deteriorating.  Ms. Rohner had sent an office-wide email clarifying responsibilities around the office, and asked Mr. Coleman to confirm that his team had read and understood the email.  Def.'s Stmt. Mat. Facts ¶ 17.  Mr. Coleman did not respond to this request.  Id. ¶ 18.  Shortly thereafter, on December 29, 2010, Ms. Rohner issued Mr. Coleman a "Letter of Counseling," which criticized his failure to follow her instructions.  Id.; see also Ex. 10 to Heiser Decl.  This letter was not placed in Mr. Coleman's official personnel folder.  Def.'s Stmt. Mat. Facts ¶ 19.

Trouble continued into the new year.  On January 19, 2011, Mr. Coleman allegedly failed to complete a checklist at the end of his shift.  Def.'s Stmt. Mat. Facts ¶ 24.  According to Ms. Rohner, this was the second time Mr. Coleman had forgotten this responsibility that month, a misstep that she had already cautioned him to avoid.  See id. ¶¶ 20-22.  Ms. Rohner issued Mr. Coleman a "Letter of Reprimand," for what she characterized as his "continued failure to follow her instructions."  Id. ¶ 25; see also Ex. 12 to Heiser Decl.

While these disputes developed, one of the two open Supervisory Production Specialist positions remained vacant, due to Mr. Eckersley's having declined the promotion.  Def.'s Stmt. Mat. Facts ¶ 15.  Kara Millhench, a GS-14 employee who was on detail to the DHS Secretary's briefing staff from another DHS office, expressed interest in the position.  Id.

3

Because Ms. Millhench was already a GS-14 employee (unlike Messrs. Coleman, Eckersley, or Destry), the position could be filled by lateral reassignment, without opening it up to competitive selection once again. Def.'s Mot. at 15; Third Rohner Decl. ¶ 9. Ms. Millhench received her reassignment on January 16, 2011. Def.'s Stmt. Mat. Facts ¶ 16.

Mr. Coleman continued to seek relief through the EEO administrative process. He added retaliation claims to his original complaint, which had initially alleged only discrimination. Almost six months after all of the events described above, Mr. Coleman's EEO complaint was finalized, and the following claims were accepted by the EEOC for investigation:

1. Whether Plaintiff was "discriminated against and subject to harassment and a hostile work environment on the bases of his race (African-American), age (DOB: [19]61), and in reprisal (for filing the instant complaint)" when the following occurred:

    a. In June 2010, he was not selected for the first Supervisory Production Specialist position, Job Announcement No. 0S-20100238;
    b. In early December 2010, he was informed that he was not selected for the second Supervisory Production Specialist position, Job Announcement No. 362712;
    c. On December 13, 2010, his supervisor "interrogated" him regarding a "false statement" made by a female co-worker; and
    d. On December 30, 2010, his supervisor issued him a Letter of Counseling.

2. Whether Plaintiff was retaliated against following his December 11, 2010 contact with the EEO office when his supervisor issued him a letter of reprimand on January 28, 2011.

Def.'s Mot. at 7 (citing Ex. 6 to Heiser Decl.). The letter confirming receipt of his claims explained to Mr. Coleman: "If you fail to contact our office, I will conclude that you agree with the claims as stated." Ex. 6 to Heiser Decl. Mr. Coleman did not identify any quarrels with the EEOC's understanding of his complaint.

The EEOC began an investigation of Mr. Coleman's claims. Just over a year later, having not received a final determination, Mr. Coleman withdrew his administrative complaint. Compl. ¶ 6. The EEOC issued him a "right to sue" letter, and he filed this lawsuit on

4

August 15, 2012. Mr. Coleman's federal court complaint is both broader and narrower than his EEOC complaint. It is broader in that it references events occurring in 2011 as also constituting discrimination and retaliation — most notably, Ms. Millhench's lateral transfer to the open Supervisory Production Specialist position. See, e.g., Compl. ¶¶ 19, 33, 42, 53. It is narrower in that it omits a failure to promote claim arising from the earlier job posting in June 2010 (No. 05-20100238), and omits a claim that Mr. Coleman was "interrogated" regarding a co-worker's false allegation that Mr. Coleman was stalking her.

## II. LEGAL STANDARDS

### A. *Motion to Dismiss under Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the facts alleged must be "enough to raise a right to relief above the speculative level." Id. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

5

In considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)). The complaint is construed liberally in the plaintiff's favor, and the Court gives the plaintiff "the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. Id. (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

*B. Motion for Summary Judgment under Rule 56*

As the Court relies on matters outside the parties' pleadings in considering some of the plaintiff's claims, the Court will apply the standards for summary judgment to those claims. See FED. R. CIV. P. 12(d); Bowe-Connor v. Shinseki, 845 F. Supp. 2d 77, 85-86 (D.D.C. 2012). Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.

While on summary judgment "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'") (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Mr. Coleman brings claims of both discrimination and retaliation under Title VII, as well as a discrimination claim under the ADEA. For each of these three claims, Mr. Coleman points to three acts of the defendant that were allegedly unlawful: (1) failure to promote Mr. Coleman, (2) issuance of a letter of counseling, and (3) issuance of a letter of reprimand. The Court will grant DHS's motion with respect to all of the claims relating to the letters of counseling and reprimand, as Mr. Coleman has conceded that such letters do not qualify as adverse employment actions. The Court will also grant DHS's motion with respect to all of Mr. Coleman's retaliation claims because the decision not to promote Mr. Coleman was made before he engaged in protected activity. Finally, the Court will deny DHS's motion with respect to the Title VII and ADEA discrimination claims for failure to promote, because Mr. Coleman has not

7

yet had an opportunity to conduct discovery to support his claims. DHS may file a renewed motion for summary judgment on these claims at the close of discovery.

### A. *Claims Relating to the Letters of Counseling and Reprimand*

Six of Mr. Coleman's claims arise out of the issuance of a "letter of counseling" on December 30, 2010, and a "letter of reprimand" on January 28, 2011. See Compl. ¶ 36 (Title VII race discrimination claims arising out of each letter); id. ¶ 45 (ADEA age discrimination claims arising out of each letter); id. ¶ 56 (Title VII retaliation claims arising out of each letter). Mr. Coleman claims that he received these disciplinary letters due to his race, age, and/or his decision to oppose unlawful employment practices. Id. ¶¶ 36, 45, 56. DHS disputes this as a factual matter, claiming that the letters were issued for legitimate, non-discriminatory reasons, having nothing to do with Mr. Coleman's race, age, or protected activity. See Def.'s Mot. at 18 (arguing that "[t]he Letter of Counseling was issued to Plaintiff for inappropriate and unprofessional conduct" and that "[t]he Letter of Reprimand was issued to Plaintiff for his failure to follow [his supervisor's] instructions"). As a legal matter, DHS also claims that these letters "do not rise to the level of adverse employment actions" cognizable under Title VII or the ADEA. Id. at 2.

Mr. Coleman offers nothing in response. Although his opposition brief addresses DHS's arguments regarding his failure to promote claims, he ignores entirely DHS's arguments for dismissal with respect to the letters of counseling and reprimand. "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002); see also Harris v. CitiMortgage, Inc., 878 F. Supp. 2d 154,

8

163 (D.D.C. 2012) ("Because this response fails to address defendants' assertions, it concedes them."); Day v. D.C. Dep't of Consumer & Regulatory Affairs, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.") (internal citation omitted). Accordingly, Mr. Coleman's claims arising from the letters of counseling and reprimand will be dismissed as conceded.

Plaintiff's concession is not surprising — the Court would have dismissed the claims even if Mr. Coleman had disputed the issue. Letters of counseling and letters of reprimand generally do not qualify as adverse employment actions under federal employment discrimination statutes (for either discrimination claims or retaliation claims). The D.C. Circuit consistently has held that "formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse employment actions." Stewart v. Evans, 275 F.3d 1126, 1136 (D.C. Cir. 2002) ("Because this report had no effect on Ms. Stewart's pay, benefits, or privileges, it cannot be considered an adverse employment action under Title VII."); see also Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (holding that a "letter of counseling, letter of reprimand, and unsatisfactory performance review" did not qualify as adverse employment actions for retaliation claims, at least when such informal discipline "contained no abusive language, but rather job-related constructive criticism" which might "prompt an employee to improve her performance"); Broderick v. Donaldson, 437 F.3d 1226, 1234 n.2 (D.C. Cir. 2006) ("[T]he disciplinary memo . . . does not qualify as an adverse action, as it did not affect [plaintiff's] grade, salary, duties, or responsibilities."); Rashad v. WMATA, 945 F. Supp. 2d 152, 164-65 (D.D.C. 2013) (letter of reprimand containing no abusive language not a materially adverse employment action); Bowe-

9

Connor v. Shinseki, 845 F. Supp. 2d at 92 ("As a general matter, . . . counseling letters and other forms of disciplinary actions do not constitute adverse employment actions."); Hyson v. Architect of Capitol, 802 F. Supp. 2d 84, 102 (D.D.C. 2011) ("A letter of counseling, written reprimand, or unsatisfactory performance review, if not abusive in tone or language or a predicate for a more tangible form of adverse action, will rarely constitute materially adverse action under Title VII."); Nurriddin v. Goldin, 382 F. Supp. 2d 79, 94 (D.D.C. 2005) ("[P]laintiff did not suffer any tangible adverse employment action from the issuance of the letter of reprimand and thus cannot establish a prima facie case of discrimination on this claim."), aff'd sub nom. Nurriddin v. Griffin, 222 F. App'x 5 (D.C. Cir. 2007).

Here, the letters of counseling and reprimand contain no "abusive language," and Mr. Coleman does not argue that they served as the "predicate for a more tangible form of adverse action," Hyson v. Architect of Capitol, 802 F. Supp. at 102 — the sort of facts that a plaintiff would have to point to in demonstrating that these forms of light discipline qualified as adverse employment actions. Thus, in light of plaintiff's concession of this point by his failure to respond, as well as the clear precedent in this Circuit suggesting that such letters, without more, can rarely (if ever) qualify as adverse employment actions, the Court will grant defendant's motion to dismiss with respect to all claims arising out of the issuance of the letters of counseling and reprimand.

### B. *Title VII Retaliation Claim for Failure to Promote*

#### 1. No Genuine Dispute of Material Fact

The dismissal of Mr. Coleman's claims arising out of the issuance of the letters of counseling and reprimand leave only one retaliation claim: under Title VII, for failure to promote. See Compl. ¶ 53. DHS moves for summary judgment on this claim for several

10

reasons. DHS proffers legitimate, non-discriminatory explanations for its decision not to offer Mr. Coleman a promotion, but also points out that the decision not to promote him was made <u>before</u> Mr. Coleman engaged in any protected activity, and, therefore, DHS's hiring decision cannot have been in retaliation for such activity. <u>Compare</u> Def.'s Stmt. Mat. Facts ¶ 12 ("These two candidates were offered positions on or before October 29, 2010."), <u>with</u> Compl. ¶ 16 ("On December 11, 2010, Plaintiff initiated contact with a DHS EEO officer over his non-selection for a promotion . . . .").

Once again, Mr. Coleman's opposition brief does not meaningfully respond to this point. He does claim to dispute the relevant paragraph of DHS's statement of facts, arguing that DHS "has not submitted any documentation" to corroborate the assertion that the decision was made before his first EEO contact, "other than" the sworn testimony of Mr. Rohner. Pl.'s Resps. ¶ 12. But Mr. Coleman cannot avoid summary judgment solely based on unsupported speculation that Ms. Rohner is lying. <u>See</u> <u>Atanus v. Sebelius</u>, 652 F. Supp. 2d 4, 13 (D.D.C. 2009) ("Mere speculation fails to create a genuine issue of material fact to avoid summary judgment."), <u>aff'd</u>, 2010 WL 1255937 (D.C. Cir. Mar. 2, 2010). In the absence of any countervailing evidence, the Court has no reason to doubt the accuracy of Ms. Rohner's three statements, spanning three years, all made under penalty of perjury. <u>See</u>, <u>e.g.</u>, Third Rohner Decl. ¶ 9 (explaining that "Mr. Eckersley declined the job offer in early November of 2010," which was before Mr. Coleman's first EEO contact); Second Rohner Decl. ¶ 24 ("[T]he candidates were offered positions by October 29th, 2010."); First Rohner Decl. ¶ 5 ("The board selected the Production Supervisors in October 2010 . . . ."). In any event, Mr. Coleman is wrong: other documentation in the record confirms that the selection was made before his first EEO contact in early December 2010. <u>See</u> Ex. 3 to Heiser Decl. (Audit Report dated October

11

29, 2010 for "Vacancy ID: 362712" listing "COLEMAN, JAMES E" as "Not Selected"); Ex. 7 to Heiser Decl. (November 5, 2010 email from Eckersley to Rohner declining the promotion).

Mr. Coleman offers no explanation as to how discovery could possibly solve his timing problem. This is not surprising — the record is crystal clear that the decision not to promote him was made before his first EEO contact in early December 2010. Because Mr. Coleman has not shown a genuine dispute of material fact regarding the date of his non-selection — nor is there any reason to believe he would be able to do so with the benefit of discovery — the Court will grant summary judgment for DHS on this claim. Mr. Coleman cannot have suffered retaliation in October 2010 for actions he took in December 2010.

2. New Claim and Failure to Exhaust

Perhaps sensing this flaw in his complaint, Mr. Coleman tries to rehabilitate his Title VII retaliation claim, in effect, by making a <u>new</u> claim. Specifically, he points to DHS's filling of the position in January 2011, by means of the lateral transfer of Kara Millhench. Pl.'s Opp. at 21-22. Again, DHS offers several responses, pointing out, first, that this claim was not exhausted before the agency and, second, that DHS had a legitimate, non-discriminatory reason for selecting Ms. Millhench: Because she was already a GS-14 employee, unlike Mr. Coleman, she could be transferred into the position without opening it up for competitive selection. Def.'s Mot. at 15; Def.'s Reply at 6 n.2; <u>see also</u> Third Rohner Decl. ¶ 9.

While focusing on the lateral transfer of Ms. Millhench in early 2011 solves Mr. Coleman's timing problem — this was after he began to engage in protected activity — it leads to a new one: Mr. Coleman's failure to exhaust this claim before the EEOC. "Title VII complainants must timely exhaust their administrative remedies before bringing their claims to court." <u>Payne v. Salazar</u>, 619 F.3d 56, 65 (D.C. Cir. 2010). And "[f]iling a formal

12

[administrative] complaint is a prerequisite to exhaustion." Hamilton v. Geithner, 666 F.3d 1344, 1350 (D.C. Cir. 2012). The D.C. Circuit has demanded specificity in a Title VII claimant's administrative complaint, reasoning that "[t]he goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." Park v. Howard Univ., 71 F.3d 904, 908 (D.C. Cir. 1995) (internal quotation marks omitted); see also Koch v. Walter, 935 F. Supp. 2d 164, 174 (D.D.C. 2013) ("Under the D.C. Circuit's approach in Park and its progeny, a complainant must be specific enough in what claims he is making and the scope of those claims to put the agency on notice of what it must address in resolving the matter. In the absence of such specificity, there can be no exhaustion of administrative remedies.") (internal citations omitted).

Mr. Coleman's EEOC administrative complaint — an extremely vague document, despite its preparation with the assistance of counsel — focuses on the October 2010 personnel decision and the letters of counseling and reprimand. See Ex. 2 to Supp. Heiser Decl. It did not put the agency on notice that Mr. Coleman intended to challenge DHS's decision to fill the position in January 2011 by means of the lateral transfer of Ms. Millhench. For this reason, the EEOC's acceptance letter mentions only the original decision to select Mr. Destry and Mr. Eckersley, rather than Mr. Coleman, through the competitive selection process in late 2010. See Ex. 6 to Heiser Decl. (explicitly mentioning the failure to promote Mr. Coleman in 2010, the letter of counseling in 2010, and the letter of reprimand in January 2011, but not mentioning the failure to promote in 2011). Mr. Coleman offers no justification for his failure to exhaust this claim, even though his EEOC complaint was not finalized until May 13, 2011, and the EEOC's confirmation letter — which explicitly listed only the 2010 personnel decision — warned him:

13

"If you fail to contact our office, I will conclude that you agree with the claims as stated." Id.; see also Hamilton v. Geithner, 666 F.3d at 1350 (affirming dismissal for failure to exhaust administrative remedies because plaintiff "neither responded to this letter nor amended his complaint at any time prior to the conclusion of the investigation" to include additional claims) (internal quotation marks and alterations omitted). Thus, Mr. Coleman did not exhaust his claim that Ms. Millhench's transfer in early 2011 violated Title VII.

To be sure, there is "a line of cases that permits federal employees to litigate unfiled claims that are 'like or reasonably related to' claims they did" properly exhaust. Payne v. Salazar, 619 F.3d at 65. But this is no help to Mr. Coleman here. First, some courts in this circuit have held that the Supreme Court's decision in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), "invalidated those precedents." Payne v. Salazar, 619 F.3d at 65; see Wada v. Tomlinson, 517 F. Supp. 2d 148, 183 (D.D.C. 2007) ("[A]s the Supreme Court's seminal decision in [Morgan] makes clear, a Title VII plaintiff is required to exhaust his or her administrative remedies with respect to each discrete allegedly discriminatory or retaliatory act."), aff'd, 296 F. App'x 77 (D.C. Cir. 2008). But in this case, the Court "need not decide whether Morgan did in fact overtake that line of cases because . . . , for a charge to be regarded as 'reasonably related' to a filed charge under that doctrine, it must at a minimum arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." Payne v. Salazar, 619 F.3d at 65 (internal quotation marks and ellipses omitted); see also Koch v. Walter, 935 F. Supp. 2d at 174. Mr. Coleman's unexhausted claim does not satisfy this standard.

Although the late 2010 and the early 2011 personnel decisions were both made regarding the same position, the similarities stop there. The 2010 decision was open to

competitive selection, and three candidates were interviewed for two openings: Mr. Coleman, Mr. Destry, and Mr. Eckersley. All three of those candidates were GS-13's, and thus all were seeking promotions. The 2011 decision, however, was filled by means of a lateral transfer, initiated by a request from an individual employee, Ms. Millhench, who was already a GS-14. Hence, any investigation into the 2011 decision could not reasonably be expected to "grow out of" Mr. Coleman's EEOC challenge to the 2010 decision. Nor did it, as a factual matter: The agency proceedings were explicitly confined to the 2010 decision, consistent with the EEOC confirmation letter, which included a clear description of the agency's interpretation of Mr. Coleman's EEOC complaint. See Ex. 6 to Heiser Decl. Thus, to the extent that the "like or related to" exception to the exhaustion doctrine survived Morgan, it does not apply here. See Rashad v. WMATA, 945 F. Supp. 2d at 167; Koch v. Walter, 935 F. Supp. 2d at 174. Therefore, because Mr. Coleman's only properly exhausted retaliation claim for failure to promote addresses events that took place before he engaged in any protected activity, the Court will grant summary judgment for DHS on this claim.[4]

---

[4] The Court notes that DHS did not fully develop this exhaustion argument until its reply brief. This may be partly explained by the fact that Mr. Coleman's complaint is not clear as to whether he intended to challenge the lateral transfer of Ms. Millhench as a discrete act of discrimination or retaliation (though Mr. Coleman does discuss this issue in his opposition brief). Litigants are strongly encouraged to raise all arguments for dismissal in their original motion, at the risk of forfeiture. See, e.g., Altman v. SEC, 666 F.3d 1322, 1329 (D.C. Cir. 2011) ("The court generally will not entertain arguments omitted from an appellant's opening brief and raised initially in his reply brief.") (internal quotation marks omitted). But when a claim suffers from an obvious defect — like the failure to exhaust administrative remedies with respect to the lateral transfer of Ms. Millhench — the Court may, in its discretion, entertain the argument in the interest of judicial efficiency. See, e.g., Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 196 (D.C. Cir. 1992) (noting that "there do exist circumstances in which a court may consider, or even raise sua sponte, arguments ignored or left undeveloped by counsel in the first round of briefing," and calling the rule against entertaining new arguments raised in reply briefs a "prudential" doctrine); see also Jaeger v. United States, 2006 WL 1518938, at *1 (D.D.C. May 26, 2006) ("Where, as here, the failure to state a claim is patent, it is practical and fully

### C. *Discrimination Claims for Failure to Promote*

Two claims remain: (1) a Title VII discrimination claim and (2) an ADEA discrimination claim, both based on DHS's failure to offer Mr. Coleman a promotion on October 29, 2010.[5]  DHS does not move to dismiss these claims, but does move for summary judgment. DHS argues that summary judgment is appropriate primarily because Mr. Coleman cannot show "that he was 'significantly better qualified'" than the candidates who were ultimately selected for the Supervisory Production Specialist position.  Def.'s Mot. at 14.  Mr. Coleman argues that he needs the opportunity to conduct discovery in order to develop further support for his claims. See Pl.'s Opp. at 8-9.

The Court will deny DHS's motion for summary judgment on these claims at this time, because Mr. Coleman has not had the opportunity to conduct any discovery in this case. "As the Supreme Court and this Circuit have repeatedly held, summary judgment is ordinarily appropriate only after the plaintiff has been given an adequate opportunity to conduct discovery." McWay v. Lahood, 269 F.R.D. 35, 39 (D.D.C. 2010); see also Celotex Corp. v. Catrett, 477 U.S. at 322 (summary judgment appropriate "after adequate time for discovery"); Anderson v. Liberty Lobby, Inc., 477 U.S. at 257 (plaintiff must have "a full opportunity to conduct discovery"); Convertino v. Dep't of Justice, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have had a full opportunity to conduct discovery.") (internal quotation marks omitted); Americable Int'l, Inc. v. Dep't of Navy, 129 F.3d 1271, 1274 (D.C.

---

consistent with plaintiffs' rights and the efficient use of judicial resources for the Court to dismiss the action sua sponte.") (internal quotation marks omitted).

[5]  To the extent that Mr. Coleman intended to challenge the lateral transfer of Ms. Millhench in early 2011 as an independent discrimination claim under Title VII or the ADEA, such a claim must fail, as a result of the same exhaustion problem discussed above.  See supra, Section III.B.2.

Cir. 1997) (summary judgment ordinarily is proper "only after the plaintiff has been given adequate time for discovery.") (internal quotation marks omitted). In employment discrimination cases, "[t]his is so even if a plaintiff has had an opportunity to collect evidence through the EEO administrative process." Richardson v. Gutierrez, 477 F. Supp. 2d 22, 30 (D.D.C. 2007); accord McWay v. Lahood, 269 F.R.D. at 39.

The Court therefore will deny DHS's motion for summary judgment on these claims, without prejudice to DHS's ability to file a renewed summary judgment motion after the close of discovery. See 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2728 at 531 (3d ed. 1998) (noting that "courts have denied summary judgment without prejudice to renewing the motion after discovery," a practice that in some cases "has led to a subsequent grant of the motion"). In doing so, however, the Court notes that — at least at this early stage in these proceedings — Mr. Coleman has put forth a very skeletal factual basis for his discrimination claims. If Mr. Coleman cannot come up with concrete factual support for his claims after discovery, they will be vulnerable to a renewed motion for summary judgment. Along these lines, the Court warns Mr. Coleman that he cannot meet his burden simply by showing that he was a member of one or more protected classes and that he suffered an adverse employment action; he must also point to a genuine factual dispute regarding whether "the unfavorable action gives rise to an inference of discrimination." George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005). The Court need not say more on this topic until after DHS files a renewed motion for summary judgment.

*D. Miscellaneous Claims*

Three additional items remain. First, DHS argues that, to the extent Mr. Coleman brings a hostile work environment claim, he has failed to allege sufficient facts to show that he

17

was "subject to severe and pervasive conduct that interfered with the terms and conditions of his employment." Def.'s Mot. at 21. The Court need not, and does not, address these arguments, because it is clear from the face of Mr. Coleman's complaint that he does not in fact assert a hostile work environment claim. To be sure, Mr. Coleman's complaint is not a model of clarity, and it does include a fleeting reference to his allegedly "being subject to harassment because of age and race." Compl. ¶ 15. And he did bring a hostile work environment claim before the EEOC. Despite all this, a close reading of the complaint makes clear that Mr. Coleman did not pursue such a claim here. Even if he had, the Court would have dismissed it, as Mr. Coleman failed to respond to DHS's arguments for dismissal on this ground. See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d at 178 ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); see also supra, Section III.A (dismissing claims arising out of issuance of letters of counseling and reprimand as conceded, due to Mr. Coleman's failure to address DHS's arguments for dismissal).

Similarly, Mr. Coleman's complaint is unclear as to whether he also intends to challenge the failure to promote him in June 2010, with regard to a separate job posting for the same Supervisory Production Specialist position. The Court interprets Mr. Coleman's complaint as not challenging this decision — likely because DHS did not hire anyone for the position at that time, Compl. ¶ 11, thus making any discrimination claim arising out of this personnel decision more difficult to prove than the other claims he already has brought. But whatever the explanation, the Court need not address this claim further, because, once again, Mr. Coleman has not responded to DHS's arguments for its dismissal. See Def.'s Mot. at 3-4 n.1 ("Plaintiff does

18

not appear to be asserting a claim based on his non-selection under vacancy announcement OS-20100328. Any such claim, in any event, would be time-barred as arising more than 45 days before Plaintiff's EEO contact in December 2010.") (citing 29 C.F.R. § 1614.105(a)(1); Compl. ¶ 16); see also Koch v. Walter, 935 F. Supp. 2d at 169-70.

Finally, DHS takes issue with a series of factual allegations that appear for the first time in Mr. Coleman's opposition brief and that appeared in neither his EEO complaint nor his complaint before this Court. See Def.'s Reply at 13-14 ("In his opposition to the Defendant's motion to dismiss, Plaintiff alludes for the first time to claims that his team lead duties were removed and he was excluded from meetings and communications that were relevant to his job."). The Court presumes these references were included in Mr. Coleman's brief to provide some factual context for his other, well-pleaded allegations. But to the extent that they were intended to support independent discrimination or retaliation claims — claims that were not exhausted before the agency, and do not appear in his complaint in this Court — they will be dismissed. A plaintiff may not bring unexhausted discrimination or retaliation claims in federal court, Payne v. Salazar, 619 F.3d at 65, and may not amend his complaint by means of an opposition brief. Mazloum v. District of Columbia, 442 F. Supp. 2d. 1, 12 n.7 (D.D.C. 2006).

Thus, to the extent that Mr. Coleman intended to press any or all three of these claims in this forum, they are dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part DHS's motion. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE: January 14, 2014            United States District Judge